[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Commissioner of the Department of Children and Families, DCF, has filed a timely motion to extent James S.' commitment to the care and custody of that agency. Additionally, DCF has requested that the court enter a finding that the child's reunification with his mother is no longer an appropriate option. The court previously terminated the parental rights of the child's father.
The child's mother, Annaliza S., has objected to the motion for extension. A contested extension hearing was held before this court on January 8, 2001.
I. Procedural Background
On December 4, 1998, DCF filed neglect petitions and sought an Order of Temporary Custody, OTC, alleging that James S. was neglected in that the CT Page 1274 child was both denied proper care and attention and further was allowed to live in conditions injurious to his well being. The OTC was confirmed on December 11, 1998. On December 14, 1999 the child was adjudged neglected and committed to the care and custody of DCF.
On October 18, 2000, DCF filed a motion to extend James' commitment to the care and custody' of the agency. The bases for the request are contained in the agency's Study in Support of Permanency Plan and Extension of Commitment dated October 6, 2000, State Exhibit A, which states
 1. At this time, the status of Mr and Mrs S's relationship is unknown. 2. Mother cannot meet the specialized needs of James. 3. Mother left both children in Mr. S's care. 4. Mother is emotionally unable to make medical decisions regarding James' treatment.
In addition to the request for commitment, DCF has recommended that the court rule that efforts to reunify the mother and child are no longer appropriate.
For the reasons set forth below, the court grants the extension of commitment However, DCF is ordered to continue to make reasonable efforts to reunify this mother and child.
From the evidence presented, the court finds the following facts:
II. FACTS
James S came into DCF custody after a violent episode during which his father, Jamie, severely injured his two-month-old child. As a result, James is now in a persistent vegetative state. He has a host of chronic medical problems, the most significant of which are neurological temperature instability, neurological mediated tachypnea, spasticity and dystonia, methincillin resistant Staph infection, cortical deafness and cortical blindness. James is currently a patient at the Hospital for Special Care in New Britain. According to medical records submitted at the extension hearing, as of December 11, 2000 the plan for this child was "Continue medical and nursing management of the above problem list and to continue working with DCF for decisions for care and ultimate discharge."
As a result of the injuries he allegedly inflicted upon this child, Jamie was arrested and charged with Assault in the First Degree. State Exhibit C. He is still in a pre-trial status. Nevertheless, on December CT Page 1275 14, 1999 Jamie consented to the termination of his parental rights.
There was testimony at the extension hearing that DCF has filed a medical malpractice action on behalf of James. They are seeking recovery from a psychiatrist who allegedly treated Jamie shortly before the date of his son's injuries. The details of that civil action were not provided to this court.
At the time of James' initial commitment, DCF sought custody of this child and his two siblings, Jimmalyn, child of both Annaliza and Jamie and Jaclyn, child of Jamie only. Since that time, both girls have been returned to the care and custody of Annaliza. There is absolutely no evidence that she contributed in any way to her son's horrific injuries.
During the period of James' commitment, Annaliza has been a devoted mother. She has moved from Naugatuck to Bristol, a town closer to the child's current hospital. She has consistently visited her son at least four times a week. Additionally, she has participated in decisions concerning her son's continued course of treatment. State Exhibit 2. Her primary concern is that the child would be removed from a hospital and placed in a foster home.
During the January 8, 2001 hearing, DCF alluded to several concerns concerning Annaliza's ability to properly parent this child. Their primary concern was the fact that Annaliza had no assistance should she endeavor to care for the child outside of a hospital environment. Additionally, DCF was concerned that Annaliza continued to visit her estranged husband while he was incarcerated. Additionally, DCF questioned Annaliza's emotional stability. In this matter, DCF alluded to the fact that although DCF has custody of James, Annaliza has medical authority to the extent that she has refused to execute a "Do Not Resuscitate" order. Finally, DCF has challenged Annaliza's motives for opposing commitment, suggesting that Annaliza was interested in a financial recovery from her husband's treating psychiatrist should the malpractice action prove successful.
III. ADJUDICATION
Extension motions are dispositional in nature, based on the prior adjudication. The judicial authority must determine, based upon a fair preponderance of the evidence, whether an extension of commitment is in the best interest of the child. (Connecticut Practice Book, Section 33-9).
This case is tragic in many respects. Review of the voluminous medical records produced at this hearing, State Exhibit 2, convinces the court that James will never recover from his current vegetative state. This CT Page 1276 child will be totally dependent upon caretakers for all of his needs.
There is not a scintilla of evidence that Annaliza is an unfit mother. Indeed, DCF presumptively acknowledged her abilities when it allowed her to assume the care and custody of Jaclyn, her stepdaughter. She had been attentive to all her child, under difficult circumstances.
Unfortunately, Jamie has extraordinary needs. Because of his severe medical condition, this child requires constant medical supervision. His condition is so extreme that he cannot maintain his own body temperature. Under current conditions, survival outside of a hospital setting is impossible. Indeed, the hospital social worker testified that under the child's present circumstances, the hospital would block any attempt to remove him from the hospital. Thus Annaliza's desire for full care and custody of her child is illusory.
This court must conclude that James cannot be restored to the care and custody his mother at the present time. DCF has proven by a fair preponderance of the evidence that the commitment of James to the care and custody of the Commissioner of the Department of Children and Families is in the best interest of each child. The petitioner's motion to extend commitment is hereby GRANTED. The commitment of James is hereby extended for a period not to exceed 12 months.
The petitioner has also requested that this court make findings that further efforts to reunify mother and child are no longer appropriate. The facts introduced at this hearing indicate that Annaliza is the only human with whom this child has maintained any consistent contact, however minimal the quality of that contact. Based on the totality of the evidence received, the court finds by a preponderance of evidence that further efforts by DCF to reunify James and Annaliza are still appropriate.
Julia DiCocco Dewey, Judge.